(9 App. Div. 536.)

FARLEY v. MAYOR, ETC., OF CITY OF NEW YORK.

(Supreme Court, Appellate Division, First Department.   November 6, 1896.)

MUNICIPAL CORPORATIONS—OBSTRUCTION OF STREET—LIABILITY.

    A city is not liable for injuries caused by a collision at night with a truck standing in a street, unless the truck had been standing long enough to make it the duty of the city to remove it; and it is immaterial that on several previous occasions the owner of the truck had left it standing all night at the same place.   Williams and O'Brien, JJ., dissenting.

Appeal from trial term, New York county.

Action by Lawrence P. Farley against the mayor, aldermen, and commonalty of the city of New York for personal injuries.   The complaint was dismissed, and plaintiff appeals.   Affirmed.

The facts are stated by Mr. Justice WILLIAMS as follows:

The action was brought to recover damages for personal injuries to the plaintiff, alleged to have been caused by the negligence of the defendant. The motion to dismiss the complaint was made at the close of the plaintiff's evidence.   No evidence was given on the part of the defense.   The grounds of the motion were a failure to show negligence on the part of the defendant, and the absence of contributory negligence on the part of the plaintiff.   The evidence given on the part of the plaintiff tends to show the following facts: The plaintiff, at the time of the accident, was a fireman in the fire department of New York City, and had been for upward of 20 years.   He was attached to engine company 20, on Marion street, and was a driver of hose cart No. 20.   On the morning of November 20, 1892, about 1:30 a. m., there was an alarm of fire sent in from the Bowery, near Broome street.   Plaintiff heard the alarm, got out of bed, and into his seat on the hose cart, and drove off to the fire, as fast as he could (as he expressed himself).   He drove through Marion into Broome street, and started easterly along Broome street towards the Bowery.   It was pretty dark.   He was driving in quite a hurry.   He saw nothing in front of him, but there was a truck standing in the street.   There was a collision by the hose cart with the truck.   Plaintiff was thrown off upon the

ground, and received serious injuries. Plaintiff was receiving a salary of $1,200 a year as fireman. He was never able to return to his work as fireman after the accident, and September 20, 1893, was retired on half pay, $600 per year. The collision was on Broome street, between Mott and Mulberry streets. There was a street-railroad track at that point in Broome street, and plaintiff was driving with one of his wheels between the rails of the track. Plaintiff drove a pair of horses on the hose cart. He had driven this team for many years. They were manageable, and the harness and cart were in good condition. The other firemen connected with the company were on the cart with the plaintiff. The assistant foreman sat beside him on the seat, and others were on other parts of the cart. None of these men saw the truck in the darkness of the night until the collision occurred. The truck stood in front of 383 Broome street. It was a double truck, and for three or four months before the accident it was accustomed, three or four nights in the week, to be left standing there over night, and sometimes it was left there daytimes. Broome street was a wide street, not a narrow one. The motion to dismiss the complaint was granted, and plaintiff excepted. A motion for a new trial on the minutes was made and denied, and from the judgment entered upon this decision, and from an order denying this motion for a new trial, this appeal is taken.

Argued before VAN BRUNT, P. J., and WILLIAMS, PATTERSON, O'BRIEN, and INGRAHAM, JJ.

Charles Steckler and Joseph Steiner, for appellant.

Francis M. Scott, William H. Rand, Jr., and Terence Farley, for respondents.

INGRAHAM, J. The only ground upon which it is claimed that the defendant is liable for the injury sustained by the plaintiff is that it was negligent in allowing a truck to remain in a public street, whereby the street was rendered unsafe for its use by the plaintiff. It is not claimed that the city of New York was the owner of the truck, or placed it in the street, but that it was the duty of the city of New York to remove the truck from the street, and so give to the plaintiff the free and uninterrupted use of the whole street. A person leaving a truck in a public street at night would undoubtedly be maintaining a nuisance, and would be liable for an injury sustained by any one in consequence thereof; but a municipal corporation is only liable for neglect in the performance of the duty imposed upon it by law of removing or abating a nuisance when created in a street. To justify a finding of such negligence it is necessary to show that either express notice was given to the municipality of the existence of the nuisance, and that a sufficient time elapsed to enable the municipal corporation to abate it, or that the unsafe condition of the street had existed for such a time that notice to the city authorities could be presumed, and a sufficient time for the abatement of the nuisance after such presumptive notice. We think that this case fails to show either such notice or that a nuisance had been maintained for a sufficient time to justify a presumption of notice. It would appear that this truck was in daily use, its owner removing it in the morning, and occasionally leaving it in the street at night. There could be no presumption that because he had left it in the street other nights, contrary to law and the corporation ordinance, he would on the night in question repeat this illegal act. Nor was there any presumption that he would select this particular spot to leave his truck, so that the city could have on hand its agent to remove it as

soon as he had left it there. There is evidence to show that on prior nights he had selected this particular spot at which to leave his truck; but on each night that it was left there, before the city could have notice of the fact that it had been left there, it had been removed. Thus, if the city had attempted to abate the nuisance maintained by the owner of this truck on prior nights, before its officers could have got to the place at which the truck had been left it would have been removed by the owner of the truck himself; and, as before stated, the fact that this owner had on prior nights left his truck in the street at this particular spot could not be held to have been notice to the defendants that he intended to again leave the truck at this particular spot.

We do not think that this case is distinguishable from the case of Breil v. City of Buffalo, 144 N. Y. 165, 38 N. E. 977. There it appeared that the owner of the house fronting upon the public street was engaged in filling up his lot by bringing dirt to the street in front of his house, where it was unloaded, and then drawn in wheelbarrows into the yard belonging to him. At times the dirt was drawn to the street faster than it was wheeled away, and in that manner it accumulated during the day. Upon one night the dirt was allowed to accumulate in the street so fast that it was not all drawn away during the day, and a pile of dirt remained in the street during the night, in consequence of which the plaintiff was injured. It was held that:

"The act of Franklin in permitting the dirt to remain in the street on the night of the accident was not sufficient to charge the city with any negligence whatever. Under the circumstances, there could have been no presumption that the dirt would be permitted to remain over night, even if the city officers had seen it there during the day."

If the officers of the city had on the preceding night seen this truck standing in the street, it could only have removed the truck to the corporation yard, and taken proceedings against the owner, and subjected him to such penalty as had been incurred by him in leaving the truck in the street. The corporation authorities could not have prevented the owner of the truck from regaining possession of the truck, and again leaving it in the street; and, unless we are prepared to hold that every truck placed in the street by any one must be removed by the city within three or four hours after it is so placed, or, in default of such removal, the city is liable to any one for any injury sustained in consequence of the truck being in the street, we cannot hold that the city neglected any duty in not removing this truck from the street on the night in question. No case with which we are acquainted has held that the city is responsible for an accident happening in consequence of a collision between two wagons in a street, whether both of such wagons are attached to horses or not, without proof that one of such wagons had been left in the street in such a position as to render the street unsafe for use for such a length of time that it had become the duty of the city to remove it. Such evidence was wholly wanting in this case, and we think that the complaint was properly dismissed.

The judgment must be affirmed, with costs.

VAN BRUNT, P. J., and PATTERSON, J., concur.

WILLIAMS, J. (dissenting).  The dismissal of the complaint was improper.  It was a case for the jury upon both the question of the defendant's negligence and the absence of contributory negligence on the part of the plaintiff.  It was the duty of the defendant to keep its streets in a reasonably safe condition for public travel.  This truck was standing in the street in the nighttime, was an obstruction in the street, which rendered the street unsafe for public travel.  It had been accustomed to stand there three or four nights in the week for three or four months before the accident.  It was peculiarly dangerous in the nighttime, when it was difficult, by reason of the darkness, to discover its presence there, and avoid it.  The city was at least chargeable with constructive notice of this obstruction, and it neglected its duty in permitting a truck to be stored in the street, night after night, for weeks and months before the accident.  There can be no doubt whatever that there was at least sufficient evidence to render the question of the defendant's negligence one of fact for the jury.

It is equally clear that the question of contributory negligence on the part of the plaintiff was one of fact for the jury.  Contributory negligence is always a question for the jury, unless some act or neglect on the part of the plaintiff can be pointed out constituting contributory negligence as a matter of law.  Here it is said the plaintiff was driving too rapidly, that he should have driven more deliberately, that the law prohibited driving faster than five miles an hour, and the plaintiff was within this provision of law.  While the manner in which the plaintiff was driving, and the rapidity with which he was driving, and the care he was exercising, were facts which might be considered by the jury upon the question of contributory negligence, we cannot assent to the proposition that the evidence in this case, as to these facts, made the question of contributory negligence one of law for the court, rather than one of fact for the jury.  Negligence is a failure to perform a legal duty, and it could not be said as a matter of law that it was the duty of plaintiff and his associates to drive slowly and deliberately, and keep the speed of the team below five miles an hour, while on their way to a fire.  The duty of firemen, when an alarm of fire is sent in, especially in the nighttime, when not only property, but human life, may be in danger, is to get up, and get out, and reach the fire, not slowly and deliberately, but hurriedly, and as quickly as possible, having due regard to their own safety.  A few seconds' loss of time may mean large loss of property, and perhaps life.  Firemen do not know how urgent the call is when the alarm comes in.  The call always means "Come at once!  Come quickly!  Lose no time!" and the duty of firemen is to obey the call, and be quick about it, and not slow and deliberate.  We are unwilling to assent to the proposition, as a rule of law, that the duty of firemen going to a fire is to keep within the rate of speed of five miles an hour, and to drive slowly and deliberately.  There was no proof in this case as to the precise or approximate rate of speed the plaintiff was driving at the time of the accident.  He says himself that he drove off from the engine house to the fire as fast as he could, and at the time of the accident he was driving in quite a hurry.  The court was not justified

in holding as matter of law that plaintiff was guilty of contributory negligence as to the rate of speed he was driving at the time of the accident. It was a question for the jury, and not for the court. He knew Broome street; that it was a street of considerable width. He did not know that this double truck was being stored there during the nighttime. He had a right to assume, in absence of any knowledge or notice to the contrary, that the city had performed its duty of keeping the street free from dangerous obstructions in the nighttime, and in a reasonably safe condition for public travel. He was an experienced driver of hose carts; had a team experienced in the work; one that he knew well; and he was attending to his driving, and doing the best he could, apparently, to get to the fire as quickly as possible in the performance of his duty. The court was not justified, upon the evidence given in the case, in holding as a matter of law that he was guilty of contributory negligence. It was clearly a question for the jury. He was bound to the exercise of such care, under all the circumstances of the case as an ordinarily careful and prudent person would have exercised. Whether he did exercise such care or not was a question for the jury, and not for the court.

There are no other questions raised in the case of sufficient merit or importance to call for a reference to them in this opinion.

The court erred in dismissing the complaint. The judgment and order appealed from should be reversed, and a new trial ordered, with costs to the appellant to abide event.

O'BRIEN, J., concurs.